715 So.2d 1068 (1998)
Maria Cristina CIFRIAN, Appellant/Cross-Appellee,
v.
Salvador CIFRIAN, Appellee/Cross-Appellant.
No. 96-4053.
District Court of Appeal of Florida, Fourth District.
August 5, 1998.
*1069 Robert J. Merlin of Robert J. Merlin, P.A., Coral Gables, for appellant/cross-appellee.
Eddy O. Marban of The Law Offices of Eddy O. Marban, Miami, for appellee/cross-appellant.
SHAHOOD, Judge.
Appellant/former wife, Christina Cifrian, raises six issues in this appeal of the final judgment dissolving her nineteen-year marriage to appellee/former husband, Salvador Cifrian. We affirm the trial court's valuation of the marital home, but reverse on all remaining issues, and remand to the trial court for further proceedings.
The former wife is forty-six years old and, although she earned a college degree, she did not work outside of the home during the marriage. The former husband is forty-five years old and, along with his father, owns an auto body business. The parties have two children, a son who was sixteen at the time of the dissolution hearing and a daughter who was eight. The parties' daughter is handicapped and totally dependent on the former wife.

I. Valuation of the Former Husband's Interest in his Corporations
The trial court's valuation of the former husband's interest in his businesses, R & A Auto Tech., Inc. ("R & A"), his current company, and CP & JS, a company which he owned and sold prior to starting R & A, underlies the remaining issues concerning alimony and child support. Prior to the hearing, the parties agreed to accept and be bound by the valuations given by Loretta Fabricant ("Fabricant"), the mutually-agreed-upon accountant. Her task was made difficult because the records provided by the former husband were either incomplete or inaccurate. Nevertheless, based on the information which she received, Fabricant concluded that the former husband's fifty-percent interest in R & A was $168,000 and that the only value to be attributed to CP & JS, which is not a going concern, was the value of whatever cash was in the bank.
Without specifying the basis for its determination, the trial court assigned a value of $168,000 to the former husband's interests in both companies, including any cash accounts. The former wife claims the court's valuation is incorrect because it does not take into account any cash balance remaining in CP & JS. The former husband disputes the court's valuation on other grounds claiming that Fabricant's valuation was unfounded for various reasons.
We agree with the former wife that the trial court erred in valuing both companies, including cash in CP & JS, at $168,000. The court did not make the required findings, and that valuation is not supported by the record. See Ross v. Bandi, 566 So.2d 55, 56 (Fla. 4th DCA 1990) (citing Saxton v. Saxton, 454 So.2d 575 (Fla. 4th DCA 1984)) ("when property valuation is an integral part of the court's entire plan of distribution, confusion as to value requires reversal of the property award"). Thus, we reverse this finding and remand for further proceedings.

II. Valuation of the Marital Home
The former wife claims error in the trial court's valuation of the marital home at $230,000 despite an appraisal report which states the value as $201,000. The former *1070 husband claims there was no error with regard to the valuation since the former wife originally estimated the home's value at $230,000 in her financial affidavit. He attacks the appraisal report as unreliable because of the types of comparables used; however, because he did not raise that objection below or introduce evidence to rebut the report, he has waived that objection.
Both parties listed $230,000 as the value of the marital home on their financial affidavits. Although the appraisal report indicated a different value, the court was certainly able to rely upon the sworn affidavits of the owners of the home in assessing its value. See generally Beaty v. Gribble, 652 So.2d 1156 (Fla. 2d DCA 1995)(no error in basing determination of the value of the husband's equity in a condominium on his financial affidavit). We therefore affirm the trial court's valuation of the marital home holding that the former wife may not submit to the trial court an affidavit swearing to a value and then complain on appeal that that figure is incorrect absent some evidence that would explain why the affidavit value was no longer accurate.

III. Alimony
The former wife has appealed the trial court's alimony and child support awards, both of which depend upon a determination of the parties' respective incomes. In this case, the court ordered the former husband to pay permanent alimony in the amount of $1,500, and found that his net monthly income after the alimony award "and the tax consequences of the alimony" is $2,650, but stated that his income "can be no less than $3,750 before consideration of alimony in that the parties' lifestyle exceeded that sum on a monthly basis." With regard to the former wife, the court determined that the period of time which the former wife spends volunteering at her daughter's school could be utilized for part-time employment, but did not place a dollar figure on her potential income. The court assessed the former wife's net monthly income at $1,237.00, which indicates that the alimony award was considered the former wife's only income.
In considering an alimony award, the trial court must consider, among other things, the monetary needs of the receiving spouse and the ability of the other spouse to pay. Weeks v. Weeks, 416 So.2d 811, 812 (Fla. 4th DCA 1982); also § 61.08(2), Fla. Stat. (1995). The trial court's grant of alimony is subject to an abuse of discretion standard of review. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). "[T]he test is whether any reasonable person would take the view adopted by the trial judge." Vandergriff v. Vandergriff, 456 So.2d 464, 466 (Fla.1984); Steinberg v. Steinberg, 614 So.2d 1127 (Fla. 4th DCA 1993), rev. denied, 626 So.2d 208 (Fla.1993).
Here, the trial court ordered the former husband to pay $1,500 per month as permanent alimony noting that "[t]he standard of living of the parties in this case has been relatively high and somewhat inconsistent with the tax returns filed." The court also recognized that the former wife's need "may be greater than $1,500", and that she did not intend to seek employment.
The only reliable evidence in the record concerning the former husband's income was the accountant's opinion of $110,678 annually and the former husband's financial affidavit indicating $2,383.33 as his gross monthly income; however, the former husband acknowledged that the company pays his expenses. He testified that had he included those receipts on his financial affidavit, his gross monthly income would instead be $4,211.33.
The trial court did not indicate the basis for its determination of the former husband's income, although it is clear that the court found that the evidence presented did not accurately reflect his income. Further, while the court indicated that the former wife could work instead of volunteer at her daughter's school, there is no imputation of income to the former wife in the alimony scheme. Also, there was no evidence to support the conclusion that the former wife could work part time and continue to care for the parties' son and handicapped daughter. See Woodard v. Woodard, 634 So.2d 782, 783 (Fla. 5th DCA 1994)(if the court imputes income to a spouse, it must indicate the amount and the source).
*1071 Because the order is unclear as to the basis for the parties' incomes, we reverse the alimony award and remand for the trial court to either make the appropriate findings or reconsider the alimony scheme.

IV. Child Support
The trial court's failure to recite a basis for its determination of the parties' incomes mandates reversal of the child support award since the parties' income underlies this calculation as well.
A child support determination is within the trial court's discretion, subject to statutory guidelines and the reasonableness test. § 61.30(1)(a), Fla. Stat. (1995); Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). Here, as discussed above, the basis for the trial court's determination of the former husband's income is unclear. Since that figure is essential to the child support award, we must also reverse and remand for the court to reconsider child support obligations after clarifying the former husband's income.
We find additional error in the trial court's failure to deviate from the support guidelines. Contrary to the former husband's arguments on appeal, the record contains ample evidence showing that the parties have incurred additional expenses in the past in meeting the needs of their handicapped daughter. As section 61.30(11)(f), Florida Statutes (1995) authorizes, the court should have considered those additional expenses and adjusted the child support award, to accommodate "[s]pecial needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines."
While the court in this case acknowledged that "it may be required that the child support for [the daughter] exceed guidelines due to the unique nature of this child's required maintenance," the court nevertheless failed to address additional child support in the final judgment. As a result, we reverse the child support scheme, and remand for reconsideration.

V. Security for Former Husband's Alimony and Child Support Obligations
Below, the former wife asked that the former husband be required to secure his alimony and child support obligations with a life insurance policy or some other asset; however, the final judgment does not address this issue.
Section 61.08(3), Florida Statutes (1995) provides that "[t]o the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose." See also Watford v. Watford, 605 So.2d 1313 (Fla. 4th DCA 1992); Sobelman v. Sobelman, 541 So.2d 1153, 1154 (Fla.1989).
The final order and the order on rehearing are silent concerning the former wife's request for a bond; therefore, we do not know whether the trial court considered the request and rejected it, or simply did not consider it. We therefore remand this issue to allow the trial court to clarify its ruling or consider the issue for the first time. See Hornbuckle v. Hornbuckle, 533 So.2d 323 (Fla. 1st DCA 1988)(trial court's silence on issue of fees constituted reversible error where the issue was properly pled, litigated, and ripe for decision.)
Based on the foregoing discussion, we reverse the final order of dissolution and remand for proceedings consistent with this opinion. On remand, the trial court should also reconsider its decision regarding attorneys' fees taking into account the above revisions to the former husband's income and support obligations and the former wife's need that her attorneys' fees be paid.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
GUNTHER, J., and RAMIREZ, JUAN, Jr., Associate Judge, concur.