POLEN, J.
Ami Shinitzky (Former Husband) appeals the trial court’s clarification order on his motion to obtain certain non-disbursed funds based on the Final Judgment of Dissolution of Marriage. This motion followed our remand in Shinitzky v. Shinitz-ky, 16 So.3d 168 (Fla. 4th DCA 2009) (,Shinitzky I), in which we affirmed the final judgment “in toto.” Former Husband argues that the trial court deviated from the final judgment, and thus erred by failing to comply with our mandate.[1] We agree and reverse.
The marriage between Former Husband and Former Wife was dissolved by the Final Judgment entered by Judge Stephen Rapp (“original judge”) on November 20, 2007. In relevant part, the Final Judgment required Former Wife to pay Former Husband half the value of certain investment accounts. Former Wife moved for partial stay of the Final Judgment pending appeal to this court. The trial court denied Former Wife’s motion and granted Former Husband’s motion to enforce the Final Judgment by affixing Former Wife’s signature for the purpose of distribution of funds under Florida Rule of Civil Procedure 1.570(d). Former Wife appealed the trial court’s Final Judgment and Former Husband cross-appealed. This court issued a temporary stay until further order of the court and then extended the temporary stay until the appeal was final. Former Wife was not required to provide a supersedeas bond in connection with the stay order.
This court affirmed the Final Judgment and issued a mandate for the trial court to enforce the Final Judgment. Shinitzky I. Thereafter, Former Husband moved the trial court to determine the amount of funds due to him with interest and to require transfer of accounts to him in accordance with the Final Judgment. Judge Lewis (“successor judge”) granted Former Husband’s motion. The order requested that the financial institutions identified in the Final Judgment transfer the funds with interest to Former Husband and required Former Husband’s counsel to provide Former Wife with an accounting of the funds, including appreciation or depreciation. Former Husband filed a motion to obtain the remaining funds he was owed. A hearing was set on the motion.
At the hearing, Former Husband explained to the court that he was still owed funds from November 2007; thus, he should be entitled to interest for the amounts he did not receive. The court disagreed and ruled that he was not entitled to interest because this court’s issuance of Former Wife’s motion to stay without a supersedeas bond[2] meant the distribution was in-kind. However, this was contrary to the Final Judgment which stated that an equalizing money payment was required.
*1012 The issues raised in Shinitzky I concerned the valuation and distribution of certain assets in the Final Judgment. 16 So.3d 168. This court “affirm[ed] the equitable distribution in toto because neither party ... established that the court abused its discretion in valuing or distributing any individual asset, in fashioning the overall scheme of distribution.” Id. at 169. This court primarily addressed whether efforts to recover Former Husband’s non-marital funds resulted in creation of a marital asset. We determined “that the evidence did not establish that marital labor and funds enhanced the asset to warrant the court’s apportionment of some of the settlement funds to Former Wife.” Id. at 171.
On remand, the trial court was to simply enforce the Final Judgment and, in its attempts to do so, it misinterpreted what this court intended. This court reviewed and affirmed the pre-Final Judgment valuation which required Former Wife to pay the equalizing amount of $193,479.50 to Former Husband, plus interest for the years she delayed disbursement. Id. at 170; see also Sheehan v. Sheehan, 943 So.2d 818, 823 (Fla. 4th DCA 2006) (providing that “the trial court has the discretion to award [a party] interest, accruing from entry of the final judgment of dissolution, on those sums that should have been distributed”). Even if Former Wife’s half of the funds diminished due to market conditions, she was still required to pay Former Husband one-half of the investments as of November 2007. If she was unable to pay that one-half from her portion of the funds, she was to use other funds to ensure he still received the same amount he was owed years ago.
The hearing excerpts show that the successor judge was mindful of her limitations when this court had affirmed on appeal the distribution of the Final Judgment. See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 328 So.2d 825, 827 (Fla.1975) (“A trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so.”); Peterson v. Peterson, 882 So.2d 528, 530 (Fla. 4th DCA 2004) (“ ‘[0]nce the ... case was decided on appeal, the circuit court was bound by the decree as the law of the case and was required to perform the purely ministerial act of implementing the mandate.’ ”).
Despite the successor judge’s recognition of her inability to change the equitable distribution of the Final Judgment, when this court had affirmed it “in toto,” she conducted a hearing, took expert testimony regarding the valuation of the funds, and made significant changes in the terms of the Final Judgment and Enforcement order. Shinitzky I, 16 So.3d at 169. The original judge’s orders enforced the Final Judgment by affixing Former Wife’s signature under Florida Rule of Civil Procedure 1.570(d). The “equalizing payment” of $193,479.50 was derived from a second order which stated that after the transfer of the Former Husband’s half share of the investment funds, the Former Wife then was to pay him the equalizing sum of $193,479.50 from her half. This was to take place within five days from the date of that order, which was issued on December 19, 2007. The equalizing sum was based primarily on October 21, 2005 values used by the original judge.
The original judge’s order was affirmed by this court, but when the Final Judgment was to be enforced below, the order was deviated from in two respects: (1) under the Final Judgment, the valuation of the investment funds at issue primarily was from October 21, 2005, with appreciation as of November 30, 2007, not the November 19, 2009 hearing date; and (2) the equalizing sum of $193,479.50 was due *1013 under the original judge’s December 19, 2007 order within five days of that order.
This court reviews construction of a final judgment de novo. Roque v. Paskow, 812 So.2d 500, 503 (Fla. 4th DCA 2002). “A modification seeks to change the status quo and seeks a new benefit for one party,” while “a clarification does not seek to change rights and obligations but to make a judgment more clear and precise.” Id. The terms of the Final Judgment regarding the investment funds were misunderstood and counsel and experts misled the trial court as to the valuation of the funds. The hearing was a general airing of the views of the counsel, experts, and even Former Husband as to how the investment funds should be valued, rather than an adherence to the terms of the Final Judgment and Enforcement order. As noted above, it is clear that the successor judge modified the terms of the Final Judgment and Enforcement order as to the investment funds at issue in this appeal, which this court previously had affirmed.
Accordingly, we reverse the trial court’s order and remand the case with instructions for the court to effectuate Judge Rapp’s Final Judgment and Enforcement order regarding disbursement of the investment funds and equalizing payment to Former Husband precisely as written and affirmed by this court. The equalizing payment is to include interest from the date it was initially due.

Reversed and Remanded with Instructions.

WARNER and TAYLOR, JJ., concur.

. The judge who entered the order on remand was not the same judge, Judge Stephen Rapp, who had entered the original final judgment.

. Failure to require a bond does not have the effect of allowing a trial court to deviate from a mandate of the appellate court. See Greenbriar Condo. Ass’n v. Padgett, 583 So.2d 1100, 1102 (Fla. 4th DCA 1991). Posting of a bond merely results in an automatic stay, whereas the absence of a bond simply requires a party to show cause why the stay should be entered. Id. Thus, the fact that this court did not require a bond had no bearing on the language of its mandate and the trial court should have done on remand what this court ordered.